# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**MARVIN MILLER,**                                            **PLAINTIFF,**

**VS.**                              **CIVIL ACTION NO. 4:04CV242-P-B**

**FIRST FAMILY FINANCIAL SERVICES,**
**ET AL.,**                                                 **DEFENDANTS.**

## **MEMORANDUM OPINION**

This matter comes before the court upon Plaintiff's Motion to Remand and for Sanctions [4-1]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## **I. FACTUAL BACKGROUND**

The plaintiff, Marvin Miller, originally filed this action on July 12, 2004 in the Circuit Court of Sunflower County, Mississippi against Defendants First Family Financial Services, et al. claiming breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, civil conspiracy, gross negligence, fraudulent concealment, unconscionability (which is not a cause of action in and of itself), "negligent, grossly negligent and wanton failure to monitor and train agents," violation of the Mississippi Unfair or Deceptive Acts and Practices Act, and breach of implied covenants of good faith and fair dealing.

The basic allegation around which all of Plaintiff's claims are centered is that, contrary to law and without his knowledge, the defendants charged him for certain types of superfluous insurance

1

on loans he received from the defendants. Miller alleges that the defendants misrepresented to him that the various and sundry types of insurance were necessarily a part of the loan agreement into which he entered. The types of insurance included: collateral protection insurance, credit accident and health insurance, accident death and dismemberment insurance, involuntary unemployment insurance, and property insurance.

Pursuant to 28 U.S.C. § 1441, the defendants removed the action to this U.S. District Court on August 20, 2004. Premised upon diversity jurisdiction, Defendant's Notice of Removal argued that not only was there diversity jurisdiction based on citizenship, but the suit also met 28 U.S.C. § 1336(a)'s greater than $75,000 amount in controversy requirement despite Plaintiff's *ad damnum* clause to the contrary.

Thus comes the instant motion to remand. The plaintiff's primary argument for remand is that the court does not have § 1336 diversity jurisdiction because the amount in controversy, as stated in the Complaint's *ad damnum* clause, is specifically limited to less than $75,000. More specifically, the last paragraph of the plaintiff's Complaint reads:

> Accordingly, Plaintiff demands judgment against the Defendants for compensatory damages in an amount to be proven at trial, plus punitive damages, pursuant to Miss. Code Ann. § 11-1-65, in an amount to be assessed. The Plaintiff further demands an award of all court costs, attorney fees and interest applicable under Mississippi law, *but in no way does Plaintiff seek a total award, including compensatory and punitive damages, court costs, attorney fees, interest, etc., in an amount equal to or greater than $75,000. Plaintiff further requests all rights, privileges and remedies provided by the Mississippi Code*.

(emphasis added).

The defendants counter in their Notice of Removal and Response to the plaintiff's motion to remand that the last sentence of the *ad damnum* clause shows that it is possible that the plaintiff

seeks more than $75,000.

After the plaintiff filed his motion to remand, his attorney filed an affidavit on December 13, 2004 certifying that "the plaintiff is not seeking any total award equal to or greater than $75,000.00."

Defendants counter that the plaintiff himself did not execute this affidavit and is ultimately not bound by his counsel's promise not to seek in excess of $75,000 in the future. As such, if the case were remanded, the plaintiff might therefore amend his complaint to ask for damages in excess of $75,000 and therefore circumvent the policies behind § 1336's requirements for diversity jurisdiction.

## II. DISCUSSION

In general, parties may remove an action from State court into federal court if the suit is one over which the federal court has subject matter jurisdiction. *See* 28 U.S.C. § 1441(a); *Manguno v. Prudential Property and Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Furthermore, the burden of showing that federal jurisdiction exists and therefore removal was proper is borne by the removing party. *Id.* (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).

Whether this plaintiff's motion to remand should be granted when that issue depends upon whether the amount in controversy requirement is met – thereby conferring or not conferring federal diversity jurisdiction. Resolution of this issue must necessarily involve *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) and the Fifth Circuit's controlling interpretation of that case in *De Aguilar v. Boeing Co.* cited above.

The Fifth Circuit in *De Aguilar* affirmed a district court's denial of the plaintiffs' motion to remand. In that case, the plaintiffs had pled in their state petition that their damages would be less than that required for federal diversity jurisdiction, but did not state a specific numerical amount. 47

F.3d at 1406. One of the plaintiffs' counsel had also filed an affidavit *along with* the petition averring that the plaintiffs would not be asking for more than the amount in controversy requirement. *Id*. at 1407. Essentially, the Fifth Circuit held that the plaintiffs in that case could not avoid removal because (1) Texas law prevented them from pleading a specific numerical amount of damages; (2) Texas law also imposed no limit on the amount of damages that could be sought by the plaintiffs in their causes of action; and (3) the defendants were thus able to demonstrate that it was facially apparent that the amount in controversy was in fact greater than the federal jurisdictional requirement. *Id*. at 1412-13.

Of course, there are two primary factual differences between *De Aguilar* and the instant case. First, the plaintiffs in *De Aguilar* were prevented by Texas Rule of Civil Procedure 47 from pleading a specific amount of damages in their complaint when that is not the case in Mississippi. *Id*. at 1406. Thus in *De Aguilar*, the plaintiff's complaint put forth an indeterminate amount of damages and simply averred that the amount in controversy was less than the federal jurisdictional requirement. *Id*. In the instant case, Plaintiff's *ad damnum* clause specified no more than $75,000. Second, one of the plaintiffs' lawyers in *De Aguilar* attached an affidavit *to the state petition* stating that plaintiffs had agreed to a irrevocable cap on the damages that could be awarded. *Id*. at 1407. In this case, however, Plaintiff's counsel submitted a similar affidavit not concurrently with their State complaint, but rather with the plaintiff's motion to remand.

However, despite these factual differences between *De Aguilar* and the instant case, the ruling from *De Aguilar* still proves dispositive in despatching the instant motion to remand. Therefore, what follows is a discussion of the applicable rules gleaned from *De Aguilar* which this court will use in deciding the motion *sub judice*.

In *De Aguilar* the Fifth Circuit began with the Supreme Court's holding in *St. Paul Mercury* that "[u]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." 47 F.3d at 1409. (quoting 303 U.S. at 288, 58 S.Ct. at 590). The Fifth Circuit then notes the famous "legal certainty" test for diversity cases drawn from *St. Paul Mercury*: "In order for a federal court to decline jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id*. (quoting 303 U.S. at 289). The Court held, however, that the legal certainty test did not apply in *De Aguilar* because the plaintiffs alleged "an indeterminate amount of damages." *Id*. at 1409. But in those cases that do involve a determinate amount of damages, the legal certainty test still applies. *Id*. at 1412.

However, Defendants in the instant case do not advance far enough to reach the legal certainty test. After a thorough reading of *De Aguilar*, it becomes clear that the applicable test in the instant case is that "the plaintiff's claim [for amount in controversy] remains presumptively valid unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount."*Id*. Further, "once the defendant has pointed to an adequate jurisdictional amount ... the *St. Paul Mercury* 'legal certainty' test is applicable." *Id.*

In the instant case, the defendants have not overcome the initial burden necessary to proceed to the legal certainty test. The defendants argue that the amount in controversy is actually over $75,000 (the current federal diversity jurisdictional amount) because the sentence "Plaintiff further requests all rights, privileges and remedies provided by the Mississippi Code" evinces that possibility.

This court is unpersuaded by the defendants' argument. That is, it is not more likely true than not that the plaintiff's *ad damnum* clause exceeds $75,000 since it is facially apparent that the clause

5

limits the plaintiff to less than the federal jurisdictional amount in controversy. Though this clause could have been drafted somewhat more clearly, this court fails to understand how one can confuse the preceding sentence of the *ad damnum* clause: "in no way does Plaintiff seek a total award, including compensatory and punitive damages, court costs, attorney fees, interest, etc., in an amount equal to or greater than $75,000."

Furthermore, the aforementioned test "is not a burden-shifting exercise ... plaintiff must make all information known at the time he files the complaint." *Id*. That is, it appears that the Fifth Circuit meant to hold that, at least in *De Aguilar*, the amount in controversy must be clear *at the time of removal*. In the instant case, the plaintiff's counsel filed an affidavit with the motion to remand, *not* at the time of removal. Thus, the court finds that the affidavit at issue in the instant case is irrelevant. But because the court finds that it was facially apparent in the complaint's *ad damnum* clause that the plaintiff was limiting his damages for all claims to under $75,000, the affidavit's validity is not at issue. In any event, this court is doubtful that the affidavit even binds the plaintiff; that is, after remand to state court, there's nothing to prevent the plaintiff from getting another attorney to amend his complaint to include more than $75,000.

In conclusion, the court finds that the plaintiff's motion to remand should be granted because the defendants failed to show by a preponderance of the evidence that the actual amount in controversy exceeded $75,000. That because the defendants did not meet their initial burden, the inquiry does not reach the "legal certainty" test according to the Fifth Circuit's holding in *De Aguilar*. Therefore, since the plaintiff's prayer for damages remains presumptively correct, the amount in controversy is less than that required by 28 U.S.C. § 1336(a) and there is no federal jurisdiction.

Having considered the plaintiff's arguments for sanctions, the court finds that the motion for sanctions should be denied.

### III. CONCLUSION

Based upon the foregoing, the court hereby concludes that the plaintiff's motion to remand should be granted while his motion for sanctions should be denied. An order will issue accordingly, **THIS DAY** of July 3, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE